```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
                           MIAMI DIVISION
                       CASE NO. 15-CR-20688


UNITED STATES OF AMERICA,           Miami, Florida

          Plaintiff,                September 13, 2019

vs.                                 9:32 a.m. to 9:49 a.m.

WILLIAM LOZANO BUSTOS,              Pages 1 to 13

          Defendant.
_____


                        SENTENCING HEARING
             BEFORE THE HONORABLE DARRIN P. GAYLES
                  UNITED STATES DISTRICT JUDGE

APPEARANCES:


FOR THE GOVERNMENT:       FRANK TAMEN, ESQ.
                          UNITED STATES ATTORNEY'S OFFICE
                          99 Northeast Fourth Street
                          Miami, Florida 33132


FOR THE DEFENDANT:        ROBERT E. ABREU, ESQ.
                          208 Alhambra Circle, Suite 504
                          Coral Gables, Florida 33134


FOR U.S. PROBATION:       Mercedes Sornoza, USPO


STENOGRAPHICALLY REPORTED BY:

                          PATRICIA DIAZ, FCRR, RPR, FPR
                          Official Court Reporter
                          United States District Court
                          400 North Miami Avenue
                          11th Floor
                          Miami, Florida 33128
                          (305) 523-5178
```

```
 1                    (Call to the Order of the Court.)
 2             THE COURT:  Please be seated.
 3             COURTROOM DEPUTY:  Calling United States versus William
 4   Lozano Bustos, case number 15-CR-20688.
 5             Counsel, please make your appearance.
 6             MR. TAMEN:  Good morning, Your Honor, Frank Tamen
 7   representing the United States.
 8             THE COURT:  Good morning.
 9             MR. ABREU:  Good morning, Your Honor.  Robert Abreu on
10   behalf of Mr. Lozano Bustos.  He is seated to my right with the
11   aid of a Spanish interpreter.  Your Honor, also seated to my
12   right is Jose Leal.  He is a law clerk with my office, and I
13   would ask the Court's permission to allow him to stay at
14   counsel table.
15             THE COURT:  That's fine.
16             MR. ABREU:  Thank you, Your Honor.
17             THE COURT:  All right.  We are here for Mr. Lozano
18   Bustos's sentencing.  I have reviewed the presentence report as
19   well as the defendant's sentencing memorandum and motion for
20   variance found at Docket Entry 304, and the notice of filing
21   with a number of letters submitted on the defendant's behalf
22   found at Docket Entry 306.
23             Were there any objections to the report?
24             MR. ABREU:  Your Honor, we filed two factual objections
25   that do not affect the guideline calculation.  I believe they
```

1    are unresolved, but I agree with Mr. Tamen that they don't
2    affect the guideline level, so I don't know if we even need to
3    address them.
4            THE COURT:  You actually filed them or just gave them?
5            MR. ABREU:  Oh, I sent them to probation.
6            THE COURT:  I can't rule on them if you just sent them
7    to probation.
8            MR. ABREU:  There was an addendum to the PSI that came
9    back.
10           THE COURT:  I know that the addendum refers to
11   something you said but unless it's filed with the Court, I --
12           MR. ABREU:  I misunderstood the instructions then, Your
13   Honor.
14           THE COURT:  Why don't you just tell me what are the
15   objections?
16           MR. ABREU:  One objection is to the fact that there is
17   an allegation that my client provided a bag with five or
18   six pounds of coffee and one of the bags contained heroin and
19   he allegedly provided this to one of the codefendants.
20           My client denies providing any bags to this individual.
21           THE COURT:  This is in which paragraph?
22           MR. ABREU:  Paragraph 40 of the PSI.
23           THE COURT:  Okay.
24           MR. ABREU:  Paragraph 42, there is an allegation that
25   my client was the one who decided to send a toolbox or a second

1   toolbox with heroin to the United States.  My client denies

2   that he was the organizer or mastermind behind the box.  He did

3   participate in that shipment but he was not the person who

4   originated the shipment.

5            THE COURT:  All right.  Mr. Tamen.

6            MR. TAMEN:  Judge, I would not ask the Court to rely on

7   any of those allegations to impose a sentence.  I don't know if

8   the Court needs to rule on them.  They are both in the PSI as a

9   result of information provided to the Government by either

10  cooperating codefendants or other co-conspirators, so there is

11  a factual basis for it.  But I don't think it's really worth

12  the time to have a factual hearing to determine something, and

13  we both agree that the Court can impose a sentence without

14  regard to those particular sections.

15           THE COURT:  I am going to overrule the objection.

16  First, I do note in both paragraphs it's referring to

17  information provide by someone else, so I take it in that

18  context.  This is what someone else said.  It doesn't

19  necessarily mean it's factually correct, and I also note as the

20  parties acknowledged, it doesn't affect the Sentencing

21  Guidelines at all but your objections are noted.  But they are

22  overruled.

23           Were there any other objections?

24           MR. ABREU:  No, Your Honor.

25           THE COURT:  According to probation, the defendant has a

1    total offense level of 31 with a criminal history category of

2    3, placing his advisory guideline range between 135 and

3    168 months.

4            What is the Government's recommendation as to an

5    appropriate sentence?

6            MR. TAMEN:  Your Honor, we recommend the low end of the

7    guideline range of 135 months.

8            THE COURT:  I am sure counsel will argue about it in a

9    moment, but as he notes in his sentencing memorandum, comparing

10   Mr. Lozano Bustos to Mr. Triana Ceballos, Mr. Triana Ceballos

11   arguably was more culpable.  His conviction involved more drugs

12   and it wasn't just heroin.  It was also cocaine.

13           Both defendants have one prior conviction for drug

14   offenses.  Are these comparable?

15           I guess the one big difference is Mr. Lozano Bustos was

16   still under supervision which is why he's at a higher total

17   offense level, but as I am weighing them both under relative

18   culpability, do they all kind of balance out as the same?

19           MR. TAMEN:  I think essentially, yes.  I think the

20   difference is the fact that this defendant was still on

21   supervised release, non-reporting supervised release at the

22   time.

23           THE COURT: Okay.  All right, Counsel.

24           MR. ABREU:  Thank you.

25           Your Honor, may I approach the podium?

 1              THE COURT:  Sure.
 2              MR. ABREU:  Your Honor, I will rely on my sentencing
 3     memorandum, but I just wanted to highlight certain things.
 4              My client began cooperating basically the minute he was
 5     arrested in Colombia.  I was retained back in June of -- or
 6     shortly after his arrest in June of 2016.  I did contact the
 7     prosecutor and let him know that my client was willing and able
 8     to cooperate.  In fact, we provided the Government two proffers
 9     that detailed a conspiracy at the airport, the El Dorado
10     Airport in Colombia, Bogota, Colombia that involved the
11     Colombian national police.
12              My client detailed the K-9 officers that allowed the
13     drugs to pass through.  He detailed the x-ray officers who let
14     the drugs pass through.  He explained the actual conspiracy,
15     how it works, not only with regards to Colombia but to Mexico
16     and how the Mexican police would allow these drugs to come
17     through having previously been notified that they were coming.
18              So he did not receive any credit for that.  My
19     understanding is the DEA had already opened an investigation
20     into that same conspiracy a month or so before.  So,
21     unfortunately, my client's information was not new information
22     to them, but in my opinion it did corroborate the DEA's
23     investigation.
24              As a result, he has had issues both in Colombia and
25     recently his family was the subject of a home invasion type

1   scenario where Colombian police officers came -- and I provided

2   Mr. Tamen a copy of the complaint to the Colombian police.

3   Colombian police officers with a blank search warrant with

4   handwritten names basically broke into his wife's house with

5   his children.  They ransacked the house.  They were looking for

6   money and drugs, and they specifically said we know your

7   husband is in the United States.  We want the money, we want

8   the drugs.

9           Obviously, the family was terrified.  There was a

10  formal complaint made to the Colombian "fiscalia" or attorney,

11  or state attorney's office and that's still pending.

12          In addition, there are several Colombian police

13  officers that are in custody today here at the Federal

14  Detention Center.  My client has not run into any of them, but

15  there are rumors -- he has heard rumors that they are blaming

16  him for the fact that they are here.  So we don't know if that

17  ties in with what happened a few weeks ago in Colombia, but he

18  is putting his safety on the line by having cooperated with the

19  Government.

20          And I would ask the Court to take into consideration

21  not only his willingness but his efforts to cooperate and the

22  fact that he has tried to do the best he can do and he is

23  putting his family at risk.  And I would ask the Court to

24  consider a variance to 120 months.  Thank you.

25          THE COURT:  All right.  Thank you.

```
 1              Mr. Tamen, do you dispute his representation regarding
 2   the defendant's attempts at cooperation?
 3              MR. TAMEN:  No, Your Honor.  The information he
 4   provided so far as we know is accurate.  Just the DEA and a
 5   vetted unit of the Colombian police had already gotten into
 6   that corruption and already had an undercover officer in place
 7   on which the prosecution that resulted in the extradition of
 8   those defendants was based, so his information was accurate but
 9   came too late to be of value.  But otherwise I don't have any
10   disagreement with what he said.
11              THE COURT:  Okay.  I don't think I got the appearance
12   from probation, so if you will, make your appearance, please.
13              THE PROBATION OFFICER:  Good morning, Your Honor.
14   Mercedes Sornoza on behalf of probation.
15              THE COURT:  Good morning.
16              Is there anything the defendant would like to say
17   before I impose a sentence?
18              THE DEFENDANT:  Your Honor, I'd like you to -- I
19   understand you have to take into account that there has been
20   recidivism from my part, but when I came out of the prison I
21   was in a very bad financial situation.  My family is very
22   numerous.  I have three grandchildren, three children.  I have
23   two that are studying at the university, so at the time when
24   Algarra, who is the one that talked to me about this so he
25   offered me some money to be able to do this transaction and
```

1   that's how I ended up involved in this.  However, right now my
2   family is suffering so very much and I'm very sorry and very
3   remorseful for all of this.
4           First of all, I would like to apologize to them.
5           So, Your Honor, I wanted to apologize in my name and my
6   family's name to you and to the United States and to all the
7   people that are present here today, and for you to give me a
8   second opportunity to be able to re vindicate myself and be
9   with my family as soon as possible.  Thank you so much.
10          THE COURT:  Thank you, sir.
11          THE DEFENDANT:  Thank you.
12          THE COURT:  The Court has considered the statements of
13  the parties, the presentence report which contains the advisory
14  guidelines and the statutory factors set forth in Title 18,
15  United States Code, Section 3553(a).
16          The Court can fashion a sentence below the advisory
17  guideline range, which I think is sufficient to satisfy the
18  statutory criteria.  It is the finding of the Court that the
19  defendant is not able to pay a fine, so a fine will not be
20  imposed.
21          It is the judgment of the Court that the defendant,
22  William Lozano Bustos, is committed to the Bureau of Prisons to
23  be imprisoned for 120 months as to Count 4 of the indictment.
24          I find that sentence to be sufficient but not greater
25  than necessary having considered all of the statutory factors

1    and, of course, the unique circumstances of this case.

2            Primarily, so there is no unwarranted sentencing

3    disparity between him and Mr. Triana Ceballos, Mr. Triana

4    Ceballos was sentenced to 120 months.  He was held accountable

5    for more drugs in addition to cocaine but, conversely, the

6    defendant was on supervision at the time of this offense from

7    his last case.  So just kind of balancing everything, I find

8    that a similar sentence is warranted and I find it to be a

9    sufficient deterrent and adequate punishment for this offense.

10           Upon his release from imprisonment, the defendant shall

11   be placed on supervised release for a term of five years as to

12   Count 4.

13           Within 72 hours of his release, the defendant shall

14   report in person to the probation office in the district where

15   he is released.  While on supervised release, the defendant

16   shall comply with the mandatory and standard conditions of

17   supervised release, which include not committing any crimes.

18   He shall be prohibited from possessing a firearm or ammunition

19   or other dangerous devices.  He shall not unlawfully possess a

20   controlled substance and he shall cooperate in the collection

21   of DNA.

22           The defendant shall also comply with the following

23   special conditions.  He shall surrender to immigration for

24   removal after imprisonment and he shall pay his outstanding

25   special assessment which the Court hereby imposes in the amount

1    of $100 as to Count 4, which shall be paid immediately to the

2    United States.

3         In sum, the defendant's total sentence is 120 months of

4    imprisonment to be followed by five years of supervised release

5    with the standard conditions and the special conditions I

6    previously mentioned and a $100 special assessment.

7         Now that the defendant's sentence has been imposed,

8    does the defendant or counsel object to the Court's findings of

9    fact or the manner in which sentence was pronounced?

10        MR. ABREU:  No, Your Honor.

11        THE COURT:  Mr. Lozano Busto, you have the right to

12   appeal your sentence imposed unless you waived that right

13   pursuant to your written plea agreement.  Any notice of appeal

14   must be filed within 14 days of entry of the formal judgment.

15        If you are unable to pay the cost of an appeal, you may

16   apply for leave to appeal in forma pauperis, meaning at no cost

17   to you.

18        Anything else today, Mr. Tamen, on behalf of the

19   Government?

20        THE DEFENDANT:  Okay, thank you.

21        MR. TAMEN:  The Government asks to dismiss Counts 1 and

22   2, which are the remaining counts applied to this case.

23        THE COURT:  The motion is granted.

24        Anything else for the defendant?

25        MR. ABREU:  Judge, the only other thing I would ask the

1    Court to have the judgment reflect that he is to receive credit
2    from the time he was detained in Colombia, that being
3    June 19th, 2016.
4           THE COURT:  Is there any objection to that, Mr. Tamen?
5           MR. TAMEN:  No, he is entitled to that.
6           THE COURT:  I'm sorry, what was that date again?
7           MR. ABREU:  June 19th, 2016.
8           THE COURT:  Okay.
9           MR. ABREU:  If the Court can make a recommendation to
10   the Bureau of Prisons that he be housed at Coleman here in
11   Florida.
12          THE COURT:  Okay.  I will make that recommendation as
13   well.  Anything else?
14          Is there a need, a separation order based on what you
15   said earlier or that's already been taken care of?
16          MR. ABREU:  He has not run into any of them and I don't
17   believe there is an issue.  If there is, I will let Mr. Tamen
18   know.
19          MR. TAMEN:  I can send a letter to the Bureau of
20   Prisons to separate the two and I will make sure they are not
21   in the same institution.
22          THE COURT:  All right.  Then we will be in recess.
23          Thank you.
24          (Proceedings were concluded at 9:49 a.m.)
25

```
 1                        C E R T I F I C A T E
 2
 3
            I hereby certify that the foregoing is an
 4
     accurate transcription of the proceedings in the
 5
     above-entitled matter.
 6

 7

 8   May 14, 2021            /s/Patricia Diaz
     DATE                    PATRICIA DIAZ, FCRR, RPR, FPR
 9                           Official Court Reporter
                             United States District Court
10                           400 North Miami Avenue, 11th Floor
                             Miami, Florida 33128
11                           (305) 523-5178
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```